# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| TEXAS DATA CO., L.L.C., | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § | CIVIL ACTION NO. 2:10-269-TJW |
| TARGET BRANDS, INC., and TARGET CORPORATION, | § § § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

### I.      Introduction

Before the Court is Defendants' Motion to Transfer.   (Dkt. No. 11.)   Defendants in this case include Target Brands, Inc. and Target Corporation (collectively "Target").   The Court, having considered the venue motion and the arguments of counsel, DENIES the motion to transfer venue to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).   The balance of the private and public factors does not demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by Plaintiff Texas Data Co., L.L.C. ("Texas Data").   *See In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) (en banc).

## II.    Factual and Procedural Background

Plaintiff Texas Data is a Texas limited liability company and has its principal place of business in Longview, Texas, which is within the Eastern District of Texas.   (Coverstone Decl., Dkt. No. 33.)   Target is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.   (Bullard Decl., Dkt. No. 11.)

Texas Data brought this action against Target for an alleged violation under 35 U.S.C. § 292 for false patent marking.   (Compl. ¶ 11, Dkt. No. 1.)   The false patent marking statute creates a *qui tam* action where, in this case, Texas Data is bringing the action on behalf of the United States of America.   Plaintiff Texas Data alleges that Target has marked and continues to mark its up & up Training Pants product (the "Accused Product") with expired or otherwise inapplicable patents.   (*Id.*)   The up & up Training Pants are manufactured by Target's vendor, Kimberly-Clark Corporation ("Kimberly-Clark").   (Metz Decl. ¶ 9, Dkt. No. 11.) Kimberly-Clark is a Delaware corporation with its corporate headquarters in Irving, Texas and a significant place of business in Neenah, Wisconsin.   (*Id.* at ¶ 2.)   Kimberly-Clark is not a party to this lawsuit.

The Accused Product is manufactured by Target's vendor, Kimberly-Clark, in Kimberly-Clark's facility in Paris, Texas, which is within the Eastern District of Texas.   (*Id.* at ¶ 9.)   Therefore, the Accused Product is physically marked in Paris, Texas.   Kimberly-Clark, however, alleges that the decisions to mark the Accused Product with the specific patent numbers are made in Neenah, Wisconsin.   (*Id.*)   In addition, the team of Kimberly-Clark employees responsible for the design of the Accused Product is also located in Neenah, Wisconsin.   (*Id.* at ¶

4.) Kimberly-Clark states that the patent markings are wholly within the control of Kimberly-Clark, not Target. (*Id.* at ¶3.)

The patent markings themselves are specifically made on the packaging for the Accused Product. (Compl. at ¶ 14.) The company that manufactures the packaging for the Accused Product, Bemis, is located in Longview, Texas, which is within the Eastern District of Texas. (Metz Decl. at ¶ 7, Dkt. No. 26.) Bemis manufactures the packaging in Longview, Texas, and then provides the finished packaging for the Accused Product to the Kimberly-Clark manufacturing facility in Paris, Texas. (*Id.*) Kimberly-Clark, however, alleges that the packaging is designed by a team in Neenah, Wisconsin, and the decision to mark the packaging with particular patents is made in Neenah, Wisconsin. (*Id.* at ¶¶ 4, 9.) Additionally, the personnel at Target that monitor changes in the Accused Product's packaging are located in Minneapolis, Minnesota, but these persons do not have a role in deciding the substance of patent markings on the up & up Training Pants. (Bullard Decl. at ¶¶ 6, 9, Dkt. No. 11.)

The present issue is Target's Motion to Transfer Venue. (Dkt. No 11.) Target moves this Court to transfer venue in this case to the Eastern District of Wisconsin. The following pages outline the Court's analysis.

## III. Analysis of Motion to Transfer Venue

There has been a recent increase in filings of false patent marking cases, and because of that, there are new issues for the Court. Thus, before proceeding into the normal law governing venue motions, the Court provides a brief summary of 35 U.S.C. § 292 and a discussion of new issues it may pose in venue transfer motions.

### A. Background of 35 U.S.C. § 292

The claims by Plaintiff in this case are brought under the false patent marking provisions of 35 U.S.C. § 292.   Section § 292 states:

> (a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public; or

> Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public--

> Shall be fined not more than $500 for every such offense.

> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292.   Section 292 creates a *qui tam* cause of action, and the statute specifies that the person bringing the cause of action on behalf of the United States shall receive one-half of the defendant's fine.   35 U.S.C. § 292.   Before the end of 2009, filings of claims for false patent marking were relatively rare.   But on December 28, 2009, the Federal Circuit issued an important opinion in *Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295 (Fed. Cir. 2009).   One holding in *Forest Group* was that the plain language of the statute requires courts to impose the maximum $500 penalty on a "per article basis."   *Forest Group*, 590 F.3d at 1304.   Thus, a company selling thousands of units of a particular product can now be fined up to $500 per each unit of product sold.   Naturally, after the *Forest Group* decision, filings of false patent marking

cases exploded.[1]  In the year 2010 alone, this Court has had over one hundred filings of false patent marking cases, and this Court had few, if any, filings before this year.

A claim for false marking has two elements: (1) marking an unpatented article; and (2) intent to deceive the public.  *See Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) ("According to the statute, when an unpatented article is marked with the word "patent" or any word or number that imports that the article is patented, and such marking is for the purpose of deceiving the public, the fine is invoked.").  Although there is limited case law interpreting Section 292 by the Federal Circuit, the Circuit has expanded on these two elements of the claim.  The court in *Pequinot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010) decided that marking articles with expired patent numbers is sufficient to meet the element of marking an unpatented article.  The court in *Forest Group* expanded on the "intent to deceive" element:

> Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true."  [*Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005)] (citing *Seven Cases of Eckma's Alterative v. United States*, 239 U.S. 510, 517-18 (1916)).  A party asserting false marking must show by a preponderance of the evidence that the accused party did not have a reasonable belief that the articles were properly marked.  *Id.* at 1352-53.  An assertion by a party that it did not intend to deceive, standing alone, "is worthless as proof of no intent to deceive where there is knowledge of falsehood."  *Id.* at 1352.

*Forest Group*, 590 F.3d at 1300.  This brief background provides context to the analysis below of the motion to transfer venue.

---

[1]  *See, e.g.*, Justin E. Gray, *False Marking – Over 500 Suits Filed in 2010; New Bill Proposed to "Fend Off" Such Suits*, Gray on Claims (Oct. 20, 2010, 10:52 AM), http://www.grayonclaims.com/home/2010/10/20/false-marking-over-500-suits-filed-in-2010-new-bill-proposed.html (explaining that by October 20, 2010, over five hundred false marking suits had been filed in the year 2010).

**B.    Plaintiff's Choice of Venue and Burden of Proof**

The defendants in this case argue that the plaintiff's choice of venue in a false patent marking case should be entitled to less than usual deference.   (*See* Motion to Transfer, Dkt. No. 11, at 5.)   But in the Fifth Circuit, the plaintiff's choice of venue is not an independent factor in the venue transfer analysis, but instead is represented in the movant's burden.   *Volkswagen II*, 545 F.3d at 315.   Thus, before proceeding into the normal venue transfer analysis, the Court addresses the burden of proof for a movant in a motion to transfer venue in a false patent marking case.   The Court holds that the burden of proof in a false marking case should be the same as the burden set forth in *Volkswagen II*, 545 F.3d at 315.

*1.    Current Fifth Circuit Law Regarding Plaintiff's Choice of Venue and Burden of Proof.*

The Fifth Circuit standard for motions to transfer venue traces its roots to the Supreme Court case of *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).   In *Gilbert*, the Supreme Court established the common-law doctrine of *forum non conveniens* in the federal courts.   *Volkswagen II*, 545 F.3d at 313.   Section 1404(a) venue transfers are decided under the same *Gilbert* factors created for the *forum non conveniens* analysis, but venue transfers may be granted upon a lesser showing of inconvenience.   *Id.* at 313-314.   The "lesser showing of inconvenience" is allowed because dismissal is appropriate for a holding of *forum non conveniens*, but under § 1404(a) a court does not have the authority to dismiss the case—only to transfer the case to another venue. *See id.* at 313.   The Fifth Circuit has explained:

> As to the appropriate standard, in *Humble Oil* we noted that "the avoidance of dismissal through § 1404(a) lessens the weight to be given" to the plaintiff's choice of venue and that, consequently, "he who seeks the transfer must show good cause."   321 F.2d at 56.   This "good cause" burden reflects the appropriate

deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice."  Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.  When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*Id.* at 315.

Thus, since the decision in *Volkswagen II*, this Court has recognized that the burden of proof is that the movant must show "good cause," and this burden is satisfied when the movant shows the transferee venue is "clearly more convenient."  *See, e.g.*, *Vora v. Scottsdale Ins. Co.*, Civ. No. 2:10-cv-089-TJW, 2010 WL 3928072, at *2 (E.D. Tex. Oct. 5, 2010).  The plaintiff's choice of venue is not an independent factor to be considered in the transfer analysis; instead, deference to the plaintiff's choice of venue is accounted for in the "clearly more convenient" burden on the movant.  *See Volkswagen II*, 545 F.3d at 315; *In re TS Tech.*, 551 F.3d at 1320.

2.      *Burden of Proof for a Motion to Transfer in a False Patent Marking Case*

As indicated above, Defendants' argue that in a false patent marking case the plaintiff's choice of venue should be given little deference.   Defendants are not clear regarding how little deference should be given; instead, Defendants state:

This relative lack of deference [to be given to plaintiff's choice of venue], as compared to the deference accorded to the plaintiff's choice under a *forum non conveniens* analysis, is especially appropriate in the present case in which a *qui tam* relator is suing on behalf of the United States.  *See United States ex rel. Roop v. Arkray USA, Inc.*, No. 04-87, 2007 WL 844691 (N.D. Miss. Mar. 19, 2007) (applying Fifth Circuit law and transferring action, at least in part because the *qui tam* plaintiff's choice of venue was entitled to little deference) (Ex. D).  The United States is the real party in interest in *qui tam* actions, *see Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756 n. 10 (5th Cir. 2001), and the Plaintiff has no personal significance to the action. Other district courts have recognized this

> relationship, and the fact that false marking defendants are the likely custodians of the majority of relevant witnesses and documents, in transferring false marking cases.

(Defendants' Brief, Dkt. No. 11, at 5.)   Further, in the background of Defendants' arguments is the suggestion that the plaintiff in this case, Texas Data, is merely a "Front for Counsel" and that "Texas Data has made a business of bringing *qui tam* false marking suits—it has filed suit in this district against at least eleven different defendants . . . and in fact, that may be its only business." (*Id.* at 1.)   Defendants have stopped just short of calling Plaintiff a "marking troll," as mentioned in the *Forest Group* decision.   *Forest Group*, 590 F.3d at 1303.   Thus, Defendants' brief additionally posits that the plaintiff's choice of venue should be entitled to less weight in this case because the plaintiff has no personal significance to the action and that the plaintiff is merely a front for counsel.

Although Defendants contend that the plaintiff's choice of venue should be given little deference, the Court finds many countervailing reasons to give the plaintiff's choice of venue its normal deference.   First, policy considerations of Section 292 support plaintiff's choice of venue having its normal deference in a false marking case.   "Congress intended the public to rely on marking as a 'ready means of discerning the status of intellectual property embodied in an article of manufacture or design.'"   *Clontech Labs.*, 406 F.3d at 1356 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).   Potential competitors may be dissuaded from entering the market if an article within the public domain is falsely marked.   *Forest Group*, 590 F.3d at 1302-03.   False patent marking may deter innovation and stifle competition in the marketplace.   *Id.*   Thus, Congress enacted 35 U.S.C. § 292 to deter false marking.   The statute is "a criminal provision."   35 U.S.C. § 292, Historical and Statutory Notes.   Further, Congress

meant to encourage third parties to bring *qui tam* actions to enforce the statute. *Forest Group*, 590 F.3d at 1303. By not giving the plaintiff's choice of forum its normal deference, this Court would frustrate Congress' intent of the statute to encourage third parties to bring these lawsuits. To illustrate, in false marking cases the defendants are likely the custodians of the majority of relevant witnesses and documents.[2] Thus, several factors considered in the venue transfer analysis, such as access to sources of proof and cost of attendance of willing witnesses, are likely to already favor transfer in a typical false marking cause of action.[3] By not giving the normal deference to the plaintiff's choice of venue, it may virtually assure that every false marking case will be litigated in the defendant's home venue. This would make it difficult for any person outside the defendant's home venue to file a false marking claim against the defendant, yet Section 292 states that "[a]ny person may sue for the penalty." Further, in this Court's view, such a result would frustrate Congress' intent to "encourage third parties to bring *qui tam* suits to enforce the statute." *Forest Group*, 590 F.3d at 1303.

In addition, the predecessor to 35 U.S.C. § 292, which was 35 U.S.C. § 50, included a provision that stated the suit must be brought "in any District Court of the United States within whose jurisdiction such offense may have been committed." *See London v. Everett H. Dunbar Corp.*, 176 F. 506, 507 (1st Cir. 1910) (giving the full text of the predecessor statute 35 U.S.C. § 50). Thus, the older statute provided that venue was only proper where the offense was committed, that is, the place of the actual stamping or affixing of the illegal marks. *Harrington v. Ciba Vision Corp.*, No. 3:08-cv-251-FDW, 2008 WL 2893089, at *1 (W.D. N.C. July 23, 2008);

---

[2] This is because the statute itself focuses on the conduct and intent of the defendant and gives little attention to the plaintiff's actions in the cause of action. *See* 35 U.S.C. § 292, Historical and Statutory Notes.

[3] This assumes that a defendant in a particular false marking case will be seeking to transfer the case to the venue at or close to where the defendant is located—which is often the situation in a motion to transfer venue, especially in the false marking cases.

*see also Maskery v. Kopp*, 412 F. Supp. 388, 389 (D.C. Conn. 1976). Under the current version, however, the particular language is not included. Congress affirmatively decided not to include that language, and under the new 35 U.S.C. § 292, venue is governed by 28 U.S.C. § 1395, which provides that venue is proper where the defendant may be found. *Harrington*, 2008 WL 2893089, at *1. "But 'found' in the venue sense does not necessarily mean physical presence." *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 454 (1943). "[A] defendant is 'found' wherever he may validly be served with process." *Harrington*, 2008 WL 2893089, at *1. Therefore, Congress expressly decided to make venue available in any district the defendant may be served with process, and not limited to where the false marking is occurring, which is often located in the defendant's home forum. As discussed above, if the Court reduces the deference given to the plaintiff's choice of venue, this may cause all litigation to migrate toward the defendant's home forum. Congress's decision to change the venue provision in the new 35 U.S.C. § 292 counsels against such a result.

Additionally, the Court is not persuaded by Defendants' attempt to effectively label the plaintiff as a false marking troll. It is this Court's view that Plaintiff's identity as a holding company formed by its lawyers does not change the deference to the plaintiff's choice of venue. The label of a "marking troll" obviously draws its name from the "patent troll" label often ascribed to entities created solely to buy patents and then license them or bring patent infringement suits.[4] But these entities own a legitimate property right—the patent—that they are seeking to enforce. The Court is not aware of any rules that apply differently to them. Likewise, a holding company formed to prosecute marking cases has a legitimate claim and the rules should not apply any different to them. Indeed, in the *Forest Group* decision, one party argued that the Federal

---

[4] *See* Donald W. Rupert, *Trolling for Dollars: A New Threat to Patent Owners*, 21 No. 3 INTELL. PROP. & TECH. L.J. 1, at *3-4, (2009).

Circuit's interpretation could give rise to a "new cottage industry" of such entities, but the Federal Circuit responded that "[t]his, however, is what the clear language of the statute allows." *Forest Group*, 590 F.3d at 1303. The Federal Circuit noted that the false marking statute did not discourage this type of litigation. Rather, "the false marking statute explicitly permits *qui tam* actions," and "[b]y permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking." *Id.* at 1303-1304.

The deference accorded to the plaintiff's choice of forum in false marking cases should be no different than other cases, such as patent infringement cases. The Fifth Circuit does not consider the plaintiff's choice of venue independently but instead as part of the burden. Thus, the burden for a motion to transfer venue in a false marking case should be the same: the movant must show the transferee venue is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. But because the plaintiff's choice of venue is taken into account in the burden on the movant, the Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly. The Fifth Circuit announced:

> Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. Thus, our analysis directly manifests the importance that we must give to the plaintiff's choice.

*Id.* at 314 n.10. The court's analysis in *Volkswagen II* reflected the importance to the plaintiff's choice of venue, as the court issued a writ of mandamus to transfer venue in that case only after it found that four of the eight *Gilbert* factors weighed in favor of transfer and no factors weighed against transfer. Against this backdrop, the Court considers the merits of this motion to transfer venue.

### C.  Applicable Law Regarding Motions to Transfer

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The Fifth and Federal Circuits have enunciated the standard to be used in deciding motions to transfer venue.  *See Volkswagen III*, 566 F.3d 1349; *In re Genentech.*, 566 F.3d 1338; *In re TS Tech USA Corp.*, 551 F.3d 1315 (applying the Fifth Circuit's en banc *Volkswagen II* decision to rulings on transfer motions out of this Circuit); *Volkswagen II*, 545 F.3d 304.  The initial threshold question is whether the suit could have been brought in the proposed transferee district.  *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004).  The moving party must show "good cause," and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient."  *Volkswagen II*, 545 F.3d at 314.  As discussed above, the "clearly more convenient" burden is applied in false marking cases.

If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district.  In making the convenience determination, the Fifth Circuit considers several private and public interest factors, none of which are given dispositive weight.  *Id.*  "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203).  "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the

avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'" *Id.*
(quoting *Volkswagen I*, 371 F.3d at 203).

### D. Proper Venue

The threshold "determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed" in the first place. *Volkswagon I*, 371 F.3d at 203. Neither party disputes that this case could have been brought in the Eastern District of Wisconsin, and this Court agrees. Thus, the threshold determination is met in this case.

### E. Private Interest Factors

#### 1. *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first factor to consider, and this factor weighs slightly in favor of transfer. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

As discussed above, there are two main elements on a false patent marking cause of action under Section 292: (1) marking an unpatented article; and (2) intent to deceive the public. *See Clontech*, 406 F.3d at 1352. Thus, the relevant sources of proof in this case primarily relate to those two elements. Additionally, since 35 U.S.C. § 292 is chiefly concerned with the conduct of the defendant[5] and the defendant has made no counterclaims against the plaintiff in this case, most of the sources of proof in this case should be located with the defendant or third parties—not the plaintiff. Texas Data, the plaintiff, is located within the Eastern District of Texas, so any sources

---

[5] The statute is "a criminal provision" and the primary focus of the statute is the conduct and intent of the defendant. *See* 35 U.S.C. § 292, Historical and Statutory Notes.

of proof with Texas Data are closer to the Eastern District of Texas. But as noted, Texas Data has few relevant sources of proof. Thus, in this case, this factor hinges on the relevant sources of proof held by Target and third parties Kimberly-Clark and Bemis.

Documents or witnesses from Target that may be used in this case are all likely located in Minneapolis, Minnesota. As Target admits, however, it does not manufacture the Accused Product or decide which patents are labeled on the packaging. (Bullard Decl., Dkt. No. 11.) But Target does admit that it approves changes to the Accused Product's packaging that are made by Kimberly-Clark. (*Id.* at ¶ 6.) Thus, Target may have documents or witnesses that may contain information related to Target's intent to deceive, and these sources of proof would be in Minneapolis, Minnesota. (*Id.* at ¶ 9.) Although Minneapolis is not in the Eastern District of Wisconsin, it is closer to that district than the Eastern District of Texas.

Bemis makes the packaging for the Accused Product. The alleged false markings are on the packaging. (Metz Decl. at ¶ 7, Dkt. No. 26.) Bemis is located in Longview, Texas, which is within the Eastern District of Texas, so any sources of proof at Bemis are closer to the Eastern District of Texas. Target discounts the sources of proof located at Bemis because Kimberly-Clark makes the decisions regarding what patents to put on the packaging and then merely sends the packaging design to Bemis for it to manufacture. (*Id.*) Further, Bemis has no input in the design and no ability to make changes to the design. (*Id.*) In this Court's view, any sources of proof related to the intent to deceive are likely located in Neenah, Wisconsin at Kimberly-Clark or in Minneapolis, Minnesota at Target. But intent to deceive is not the only element; another important element of the offense is the actual marking of the unpatented article. *See Clontech*, 406 F.3d at 1352. Sources of proof related to the marking of the packaging are

likely located at Bemis because Bemis physically marks the packaging. Additionally, since the number of articles marked is an issue for damages under Section 292, sources of proof related to the number of units of packaging manufactured at Bemis are likely located at Bemis. (Coverstone Decl. at ¶¶ 13, 14, Dkt. No. 33.) Therefore, there are sources of proof at Bemis, in Longview, Texas, within the Eastern District of Texas.

Finally, according to Target, many sources of proof are located with Kimberly-Clark. Kimberly-Clark states that relevant witnesses and documents related to the decisions to mark the Accused Product are located in Neenah, Wisconsin, which is within the Eastern District of Wisconsin. (Metz Decl., Dkt. No. 26.) Those sources of proof are relevant to intent. There may also be sources of proof in Kimberly-Clark's Paris, Texas, which is within the Eastern District of Texas. Texas Data alleges that Kimberly-Clark's Paris, Texas facility may have information, such as the number of products manufactured, that may be relevant to damages. (Coverstone Decl. at ¶¶ 13, 14, Dkt. No. 33.) Further, Kimberly-Clark is headquartered in Irving, Texas, which is much closer to the Eastern District of Texas than the Eastern District of Wisconsin. There may be sources of proof in Irving, Texas at the Kimberly-Clark headquarters.[6] Although there are some sources of proof closer to the Eastern District of Texas, the majority of the sources of proof with Kimberly-Clark are located in Neenah, Wisconsin.

Because the sources of proof are not clustered near the proposed transferee district, this case is distinguishable from *Volkswagen II* and *In re TS Tech*. In *Volkswagen II*, all of the

---

[6] Both parties have identified few sources of proof for this case. This is not surprising, however, because there has been little discovery in this case. Defendants claim there are no sources of proof in Irving, Texas because it all sources of proof are in Wisconsin. Plaintiff alleges, on the other hand, that sources of proof may be in Irving such as documents or witnesses related to the number of products made and marked, general company policies that may be relevant to intent, or other information. Thus, the Court must at least give some weight to potential sources of proof in Irving, Texas.

physical evidence was located within the proposed transferee venue. *Volkswagen II*, 545 F.3d at 316. Similarly in *TS Tech*, all of the sources of proof were located within 300 miles of the proposed transferee district, the Southern District of Ohio, and the original venue, the Eastern District of Texas, was about 900 additional miles away. *In re TS Tech Corp.*, 551 F.3d at 1320-21. In these two cases, access to the physical evidence was clearly more convenient in the proposed transferee venue.

In contrast to *Volkswagen II* and *In re TS Tech*, the physical evidence in this case is distributed across the country with some evidence in the Eastern District of Texas and some evidence at or near the Eastern District of Wisconsin. As noted above, the Court puts little weight on sources of proof located at Texas Data's place of business in Longview, Texas because Texas Data's sources of proof have limited use in this case. Although Bemis may only have a small number of sources of proof, those sources are in Longview, Texas. In contrast, nearly all of Target's sources of proof are located in Minneapolis, Minnesota, which is closer to the Eastern District of Wisconsin. Finally, Kimberly-Clark likely keeps more of its sources of proof in Neenah, Wisconsin than in its Paris, Texas facility or headquarters in Irving, Texas. Therefore, after considering these facts, the Court holds this factor only slightly weighs in favor of transfer.

### 2. *Availability of Compulsory Process*

The next private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses, and this factor weighs slightly against transfer. Rule 45(c)(3)(A)(ii) limits the Court's absolute subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Volkswagen II*, 545 F.3d at 316. This factor will weigh more heavily in favor of transfer when more non-party witnesses reside within

the transferee venue. *See id.* This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *See id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

There are many non-party witnesses in this case—most from either Kimberly-Clark or Bemis.[7] Bemis's third party witnesses are located in Longview, Texas, and these witnesses are subject to absolute subpoena power of this Court because they are within 100 miles of the courthouse. As noted above, the witnesses from Bemis may be able to testify regarding the physical marking of the Accused Product's packaging or to the number of units of packaging that are marked. (Coverstone Decl. at ¶¶ 13, 14, Dkt. No. 33.) But there are relatively few potential witnesses from Bemis as compared to Kimberly-Clark. There are Kimberly-Clark employees located in Neenah, Wisconsin and Oshkosh, Wisconsin that have information relating to the decisions to mark the packaging with the Patents. (Metz Decl., Dkt. No. 26.) The Green Bay division of the Eastern District of Wisconsin would have absolute subpoena power over these witnesses because it is located within 100 miles from Neenah and Oshkosh. There are, however, potential third-party witnesses with Kimberly-Clark that are within the subpoena power of this Court and not the Eastern District of Wisconsin. Potential witnesses at the Kimberly-Clark's Paris, Texas facility would also likely be within 100 miles from this Court and so this Court would have absolute subpoena power.[8] Further, even for any potential witnesses located at

---

[7] Neither party has provided a list of the potential non-party witnesses; however, both parties appear to be proceeding on the assumption that the third party witnesses are located at the company's places of business.

[8] Paris, Texas is approximately 100 miles from the Marshall courthouse. Depending on the exact location (which the parties have not provided) of the witness's residences and the Paris, Texas facility it could be more or less than 100 miles. *See Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D. D.C. 2007) ("[T]he limitation in Rule 45 unequivocally applies both to attending a deposition to testify and to being required to produce documents at a distance more than

Kimberly-Clark's headquarters in Irving, Texas, this Court has subpoena power, even though it is not "absolute" subpoena power.   *See Volkswagen II*, 545 F.3d at 316.

It is worth noting that the venue transfer analysis adopted by the Fifth Circuit in *Volkswagen II* based its analysis on the "*Gilbert* factors,"[9] which were set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).   The "availability of compulsory process" factor in *Gilbert* reads specifically as "availability of compulsory process for attendance of *unwilling*."   *Gilbert*, 330 U.S. at 508 (emphasis added).   Further, the Supreme Court in *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 241 (1981),[10] also endorsed the *Gilbert* factor of "availability of compulsory process for attendance of unwilling . . . ."   Thus, the history of this factor shows it also was based on whether a witness would willingly or voluntarily appear.[11]

The "unwillingness" of a witness to appear is worth mentioning in this particular case.   In Target's brief, (Dkt. No. 11), the third-party witnesses it mentions as needing compulsory process to secure their attendance are current and former employees of Kimberly-Clark.   In this Court's view, current employees of Kimberly-Clark are, for all practical purposes, willing witnesses for Target.   Kimberly-Clark is closely cooperating with Target in this litigation, as evidenced by Kimberly-Clark employees giving declarations in support of this motion to transfer venue.   (*See*

---

[9] *See Volkswagen II*, 545 F.3d at 315 ("[W]e have adopted the private and public interest factors first enunciated in [*Gilbert*]").

[10] *See Volkswagen II*, 545 F.3d at 313-314 (relying on *Piper Aircraft* in addition to *Gilbert*).

[11] When listing the *Gilbert* factors to be considered, *Volkswagen II* omitted the "unwilling" language in the "availability of compulsory process" factor.   *See Volkswagen II*, 545 F.3d at 315.   But the Court never stated or implied that it was not adopting the "unwilling" language.   *Id.*   Indeed, the Fifth Circuit in *Volkswagen II* unconditionally adopted the *Gilbert* factors themselves.   *See id.*   ("As noted above, we have adopted the private and public interest factors first enunciated in [*Gilbert*] . . . .").   Further, *Volkswagen II* cited to *Volkwagen I* when listing the private interest factors.   *Id.*   Although *Volkwagen I* also did not use the "unwilling" language, *Volkwagen I* cited to *Piper Aircraft*, which used the "unwilling language."   *See Volkwagen I*, 371 F.3d at 203; *Piper Aircraft*, 454 U.S. at 241 n.6.   The Court doubts the Fifth Circuit would have expressly adopted the *Gilbert* factors on the one hand only to alter them, *sub silentio*, on the other.

Metz Decl., Dkt. No. 34.) Further, at a hearing on this motion, Target informed the Court that Kimberly-Clark is assisting Target with the defense in this case. (*See* Transcript at 2, Dkt. No 31.) Thus, Target does not need a subpoena to compel the attendance of Kimberly-Clark's current employees since Target (through Kimberly-Clark) has control over them. The only potential unwilling third-party witnesses mentioned by Target are Kimberly-Clark's ex-employees—which perhaps explains why at the hearing on this motion Target only emphasized Kimberly-Clark's *ex-employees.* [12] Target, however, has not identified any of these ex-employees, and there may also be ex-employees of Kimberly-Clark from its Paris, Texas facility or Irving, Texas headquarters. On the other hand, the subpoena power of the Eastern District of Texas may prove to be invaluable for Texas Data to compel testimony of third party witnesses from Bemis in Longview, Texas, and witnesses from Kimberly-Clark in Paris, Texas or Irving, Texas. Texas Data has no control over or relationship with these third parties, and so Texas Data is much more likely to need this Court's subpoena power. It is true, however, that Texas Data might benefit from the subpoena power of the Eastern District of Wisconsin to secure attendance of Kimberly-Clark's third-party witnesses in Wisconsin. Nevertheless, Texas Data chose to file this lawsuit in the Eastern District of Texas and also oppose this motion to transfer to the Eastern District of Wisconsin—thus, Texas Data can hardly complain about the lack of compulsory process over these witnesses.[13]

---

[12] *See* Transcript at 4, Dkt. No. 31 (Counsel for Target stating: "The compulsory process factor favors Wisconsin because of Kimberly-Clark as you may realize *is voluntarily participating in this case*, but there are *ex-employees* of Kimberly-Clark, there are vendors and *ex-employees* of vendors of Kimberly-Clark that are all still located in Wisconsin, and should the subpoena power of the Court be required, it would be best to operate there.") (emphasis added).

[13] Indeed, Texas Data is not complaining, that is, it wants to remain in the Eastern District of Texas.

All in all, on one hand, this Court may not have subpoena power of many third-party witnesses—employees and ex-employees of Kimberly-Clark—in Wisconsin. But as discussed above, Target does not practically need subpoena power over current Kimberly-Clark employees. Although it may need subpoena power for ex-employees of Kimberly-Clark, at this point, Target has named no ex-employees that it would need.[14] On the other hand, this Court has absolute subpoena power for potential witnesses from Bemis in Longview, Texas and also witnesses from Kimberly-Clark in Paris, Texas. This Court also has subpoena power for trial over potential Kimberly-Clark witnesses at its headquarters in Irving, Texas.[15] Thus, this factor weighs slightly against transfer.[16]

3. *Cost of Attendance for Willing Witnesses*

Next, the Court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Northern District of California, and this factor slightly favors transfer. The Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel

---

[14] The Court is not suggesting that it is not considering the fact that there may be ex-employees of Kimberly-Clark in Wisconsin over which Target needs subpoena power. The Court merely notes that Target has not identified any ex-employees of Kimberly-Clark in Wisconsin, and that affects the weight the Court will give to this argument—particularly considering that Target bears the burden as movant in this motion to transfer.

[15] The Court realizes that Texas Data, conversely, has not named any potential witnesses from Bemis in Longview, Texas or Kimberly-Clark in Paris or Irving, Texas. But it is Target, not Texas Data, which has the burden as the movant on this motion to transfer. Implicit in this burden is the obvious notion that although on one hand Target has a great incentive to identify witnesses in Wisconsin in order to support its transfer motion to the Eastern District of Wisconsin, on the other hand it has less incentive to identify witnesses in Texas that would undermine its motion to transfer. This notion is further compounded because Target is the likely possessor of any such information and that little, if any, discovery has taken place in this case that would enable Texas Data to discover this information. Finally, the Court finds more plausible the existence of material *current employees* that may be needed from Bemis in Longview or Kimberly-Clark in Paris or Irving than material *former employees* from Kimberly-Clark in Wisconsin.

[16] In Texas Data's response brief, (Dkt. No. 24 at 7), it contends that this factor is neutral; however, this was before Texas Data learned that Bemis in Longview, Texas actually manufactured the packaging for the Accused Product. Target did not make this fact known until it filed a declaration in their reply brief. (*See* Metz Decl. at 7, Dkt. No. 26.) As evidenced by their position at oral argument for this motion, (*see* Transcript at 6-8, Dkt. No. 31), Texas Data takes a different position now that Target has made more relevant information available in its reply brief.

time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205. The Court must consider the convenience of both the party and non-party witnesses. *See id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d. 761, 765-66 (E.D. Tex. 2009).

The Court first observes that neither party has provided a list of potential witnesses in this case.[17] The Plaintiff Texas Data's witnesses are located in Longview, Texas, and it would be more convenient for them to appear in the Eastern District of Texas. One potential witness for Texas Data is its president, Thomas Coverstone, who has resided within the Eastern District of Texas in the Marshall Division for over a year. (Coverstone Decl. ¶6, Dkt. No. 33.) There are also potential witnesses at Kimberly-Clark's Irving, Texas headquarters, Kimberly-Clark's Paris, Texas facility, and the Longview, Texas facility of Bemis. (*See* Metz Decl., Dkt. No. 26; Bullard Decl., Dkt. No. 11.) It would be much less costly and burdensome for these witnesses to appear in the Eastern District of Texas than the Eastern District of Wisconsin, as the Eastern District of Texas is closer to all of these witnesses.

On the other hand, potential witnesses that are employees of Target are located in Minneapolis, Minnesota, which is closer to the Eastern District of Wisconsin than the Eastern District of Texas. (Bullard Decl., Dkt. No. 11.) Target admits, however, that its employees in Minneapolis are not as relevant to this case because of their lack of knowledge about the Accused Product and their limited decision-making powers with respect to the marking of patents on the

---

[17] Both parties, and thus this Court, proceed under the assumption that Texas Data's witnesses are in Longview, Texas, and the majority of Kimberly-Clark's witnesses are in Neenah, Wisconsin and Target's are in Minneapolis, Minnesota. The Court also observes that little discovery has been performed at this point in the case, so the parties are not likely aware of all potential witnesses. Additionally, Target, as the movant in this motion to transfer venue, bears the burden.

Accused Product. (*Id.*) Instead, Target states, and Kimberly-Clark agents agree, that most of the knowledgeable and relevant witnesses in this case will come from Kimberly-Clark employees in Wisconsin. (*See id.*; Metz Decl., Dkt. No. 26.) Texas Data even agrees that these employees would more conveniently appear in Wisconsin and that this aspect favors transfer. (*See* Texas Data's Response at 7, Dkt. No. 24.)

In this Court's view, given the context of this case as a Section 292 cause of action where relevant inquires are conduct, actions, and intent of the defendant and/or its agents such as Kimberly-Clark, the witnesses from Kimberly-Clark in Wisconsin and Target in Minnesota will be more numerous in this case. However, there are also potential witnesses from Texas Data in Longview, Texas, Kimberly-Clark in Paris and Irving, Texas, and Bemis in Longview, Texas, so this factor only slightly weighs in favor of transfer.

### 4. *Other Practical Problems*

Practical problems include issues of judicial economy. *Volkswagen III*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Judicial economy weighs against transfer when the Court already has familiarity with the case's factual issues. *Id.* Further, the Court often considers the possibility of delay and prejudice if transfer is granted, but delay and prejudice associated with transfer is relevant "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence." *ICHL, LLC v. NEC Corp. of America*, No. 5:08-cv-65, 2009 WL 1748573, at *12 (E.D. Tex. June 19, 2009) (quoting *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003)). The parties have not identified any special circumstances of judicial economy or other practical problems that weigh against transfer, so this factor is neutral.

### D. **Public Interest Factors**

### 1.    *Court Congestion*

The Court may consider how quickly a case will come to trial and be resolved.   *In re Genentech*, 566 F.3d at 1347.   This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors."   *Id.*   The parties agree that (1) the median time to trial for cases in the Eastern District of Texas is faster than the median time to trial in the Eastern District of Wisconsin (28 to 25 months); but (2) the median time for all dispositions is faster in the Eastern District of Wisconsin than in the Eastern District of Texas (10.8 to 7.2 months).   This District has treated time-to-trial differences as meaningful and weighing against transfer, *see ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 125 (E.D. Tex. 2009); however, given the speculative nature of this factor, the conflicting evidence, and the relatively small differences in time, the Court finds it to be neutral.

### 2.    *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).   Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.   *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

First, the Court addresses Target's argument that "plaintiff appears to have created a weak business practice in the forum solely for the convenience of its litigation counsel," and "its choice of venue is a 'legal fiction' that is not to be given weight in the venue analysis."   (Target's Motion

at 11, Dkt. No. 11.)  Target cites *In re Zimmer Holdings, Inc.* 609 F.3d 1378 (Fed. Cir. 2010), in support of its argument.  *Zimmer*, however, is distinguishable in this case.  In *Zimmer*, the plaintiff was a Michigan limited liability corporation with a registered office in Michigan and all its corporate officers resided in Michigan, one of which was the inventor of the asserted patent in the patent infringement suit.  *Id.* at 1381.  The plaintiff had no employees in Texas, but the plaintiff had a Texas office, which it shared with another of its trial counsel's clients.  *Id.*  The plaintiff argued this should have some weight in the analysis in the motion to transfer from the Eastern District of Texas to the Northern District of Indiana.  *Id.*  But the Federal Circuit held that the plaintiff "has no presence in Texas that should be given weight in the transfer analysis." *Id.*  That was "a classic case where the plaintiff is attempting to game the system by artificially seeking to establish venue by sharing the office space with another of the trial counsel's clients." *Id.*

Another more recent Federal Circuit case that is also relevant but distinguishable is *In re Microsoft Corp.*, Misc. No. 944, 2010 WL 4630219 (Fed. Cir. Nov. 8, 2010).  In that case, the plaintiff operated its company from the United Kingdom, but it opened an office and created an entity in Tyler, Texas—which had no local employees.  *Id.* at *1.  The plaintiff's website directed requests and inquiries to its Texas office, but those requests were answered by the plaintiff in the United Kingdom.  *Id.*  The Federal Circuit noted "[t]he only added wrinkle [as opposed to *Zimmer*] is that [plaintiff] took the extra step of incorporating under the laws of Texas 16 days before filing suit."  *Id.* at *4.  "But, that effort is no more meaningful, and no less in anticipation of litigation, than the other ones we reject."  *Id.*

The present case is not a situation where a plaintiff from out of the state or country, as in *Zimmer* and *Microsoft*, created a company or office in the Eastern District of Texas to manipulate venue. The president of the company for Plaintiff Texas Data, Thomas Coverstone, has lived within the Eastern District of Texas for over a year. (Coverstone Decl., Dkt. No. 33.) Virtually all of Texas Data's activities, including its employees, are in the Eastern District of Texas. (*Id.*) Thus, this case is in contrast to *Zimmer* where nearly all of the activities and employees were in Michigan and *Microsoft* where the principal of the plaintiff was in the United Kingdom. Although Texas Data was incorporated three days before Texas Data filed its first false marking suit, Texas Data was not formed to manipulate venue as in *Zimmer* and *Microsoft*. Texas Data's president and employee has lived in the Eastern District of Texas for over a year. (*Id.*) Thus, it is natural and logical for the limited liability company to be formed under Texas laws and the office to be located in the Eastern District of Texas. Further, even assuming Texas Data is merely a "Front for Counsel" as Target emphasizes,[18] this does not show Plaintiff Texas Data is attempting to manipulate venue. Its counsel, the Stevens Love firm, maintains its only office in the Eastern District of Texas and several of its lawyers have been practicing in the area for over ten years. Thus, it is natural and logical for them to form the limited liability company in Texas (assuming, *arguendo*, it is a "Front for Counsel"). There is no dispute that Texas Data was formed in anticipation of litigation, and its business model is solely to bring false marking lawsuits. But there is a difference between forming a company in an attempt to manipulate venue and forming a company in anticipation of litigation. The former was condemned by the Federal Circuit in *Microsoft*. The latter the Federal Circuit approved in *Forrest Group*. *See Forrest Group*, 590

---

[18] Note that Texas Data denies that it is a "Front for Counsel." (*See* Coverstone Decl. at ¶ 12, Dkt. No. 33.)

F.3d at 1303-1304 (discussing how the false marking statute permits "'a new cottage industry' of false marking litigation" and that with respect to "'marking trolls,'" the false marking statute "explicitly permits *qui tam* actions."). Therefore, the Court will give some weight to the fact that Plaintiff Texas Data is incorporated in Texas and conducts all relevant operations in the Eastern District of Texas.

Aside from the localized interest in deciding a localized dispute where the plaintiff resides in the District, there are other local interests within the Eastern District of Texas. The Paris, Texas facility where Kimberly-Clark manufactures the Accused Product creates a local interest in the Eastern District of Texas. Bemis manufactures the packaging of the Accused Product in Longview. This, too, creates a local interest in the Eastern District of Texas. Even Kimberly-Clark's headquarters in Irving, Texas creates a local interest in Texas. On the other hand, there are local interests in the Eastern District of Wisconsin. Target's headquarters is located in Minneapolis, Minnesota and this is closer to the Eastern District of Wisconsin. But the majority of the decisions relating to the decisions to mark the Accused Product with specific patents are apparently made in Neenah, Wisconsin, and that creates a local interest in the Eastern District of Wisconsin. This is particularly important in a false marking case because one of the two major elements is the defendant's intent to deceive. Therefore, the Court holds this factor is neutral.

3.      *Familiarity with the Governing Law*

One of the public interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the Eastern District of Texas and the

Eastern District of Wisconsin are equally capable of applying the law for false patent marking claims; therefore, this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320.

4. *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

**E. The Court Denies Target's Motion to Transfer**

The movant has the burden to show the Eastern District of Wisconsin is "clearly more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 314. As the Court discussed above, the "clearly more convenient" burden is applied in false marking cases just as in other cases such as patent infringement cases. The Fifth Circuit in *Volkswagen II* recognized this "significant burden" and issued a writ of mandamus to transfer only after it found that four of the eight *Gilbert* factors weighed in favor of transfer and no factors weighed against transfer. *Id.* at 316-19. In balancing the *Gilbert* convenience factors in this case, the Court observes that two factors slightly weigh in favor of transfer and one factor slightly weighs against transfer. Therefore, Target has not met its burden in showing the Eastern District of Wisconsin is "clearly more convenient" than the Eastern District of Texas.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Target's Motion to Transfer to the Eastern District of Wisconsin.

It is so ORDERED.

SIGNED this 12th day of January, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE